J. Randall Jones, Esq., NV Bar No. 1927
r.jones@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000

Patrick English, Esq. *(pro hac vice pending)*
dinesandenglish@aol.com
DINES and ENGLISH, LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
Telephone:  (973) 778-7575

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT BRANT, an individual,<br><br>        Plaintiff<br><br>vs.<br><br>GREG COHEN; RAPACZ BOXING, LLC; CORY RAPACZ; TOP RANK, INC.; and Does 1-5,<br><br>        Defendants. | Case No.:   2:21-cv-00618-JCM-BNW<br><br>**EXHIBITS TO COMPLAINT** |

        COMES NOW Plaintiff Robert Brant, by and through his undersigned counsel, hereby submit Exhibits A and B to the Complaint.

        DATED this 15th day of April, 2021.

KEMP JONES, LLP

*/s/ J. Randall Jones*
J. Randall Jones, Esq., NV Bar No. 1927
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Patrick English, Esq. *(pro hac vice pending)*
dinesandenglish@aol.com
DINES and ENGLISH, LLC
685 Van Houten Avenue
Clifton, New Jersey 07013

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of April, 2021, I electronically filed and served the foregoing via the United States District Court for the District of Nevada using the CM/ECF system.

*/s/ Pamela Montgomery*
An employee of Kemp Jones, LLP

KEMP JONES, LLP
3800 Howard Hughes Parkway
Seventeenth Floor
Las Vegas, Nevada 89169
(702) 385-6000 • Fax (702) 385-6001
kjc@kempjones.com

# Exhibit A

With redactions requested by Top Rank, Inc.

## CO-PROMOTIONAL RIGHTS AGREEMENT

This Agreement dated as of November 16, 2018 between TOP RANK, INC.,

("Promoter") on the one hand and Rob Brant ("Fighter"), Greg Cohen Promotions and Rapacz

Boxing LLC ("Co-Promoters") on the other hand.

WHEREAS, Fighter wishes to obtain certain promotional services and commitments

of Promoter to further Fighter's career as a professional boxer, and Promoter is willing and

able to provide the promotion of a number of Bouts (as defined herein) for Fighter upon the

terms and conditions set forth below.

NOW, THEREFORE, in consideration for the mutual promises set forth herein, the

parties agree as follows:

1.      Grant of Promotion Rights.

During the term of this Agreement and any extension thereof, Fighter hereby grants to

Promoter the exclusive right to promote those professional boxing contests to be engaged in by

Fighter and to be promoted by Promoter as provided in this Agreement (each a "Bout"),  Promoter

shall promote such Bouts subject to the terms and conditions set forth herein, and the terms of

this Agreement shall apply to championship title Bouts as well as non-title Bouts.   Such

promotional rights shall include all exclusive rights required to stage and sell tickets of admission

to such boxing contests as well as the right to exploit and market all ancillary rights thereto,

including, without limitation of the foregoing, all exclusive worldwide rights to broadcast,

telecast, exhibit, transmit, record and film such Bouts, and materials prepared for the promotion

of such Bouts, for exhibition on a live or delayed basis in any and all media (whether now existing

or hereafter devised) throughout the universe in perpetuity, including, without limitation of the

foregoing, all worldwide television rights, including, without limitation of the foregoing, the

1

unlimited and unrestricted right to telecast the Bouts referred to herein by means of live or delayed free over-the-air, cable, subscription, master antenna, multi-point or closed circuit television; pay-per-view television by means of terrestrial, cable, over-the-air, satellite, analog and digital transmission as well as Video On Demand, Near Video On Demand and HDTV, PDAs and other multimedia services; radio; films and tapes, for exhibition in all media and in all gauges, whether for theatrical exhibition or for sale, lease or license for home use, including audio and audio-visual cassettes and discs, CD-ROM, digital video devices ("DVD"), all forms of internet on-line services or delivery, games and toys, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection in the United States and all other countries of the world where such protection is available in the name of Promoter or Promoter's nominees or assignees and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing, all in such manner as Promoter in its sole discretion shall determine. Further, Fighter grants to Promoter all commercial and non-commercial advertising uses of the Bouts, portions of the Bouts, and promotional material related to the Bouts, and Fighter's name and image, with respect to which Fighter hereby waives his personal right of privacy.  Fighter grants to Promoter the right to use in any medium the name, likeness and biographical material of Fighter, and his trainers and seconds, for the purpose of advertising and promoting the Bouts, of advertising and promoting Promoter, of advertising and promoting Fighter's participation in the Bouts, and of advertising and promoting the Ancillary Rights, as defined herein, including souvenirs sold in connection with the Bouts or the sale any time thereafter and including institutional advertising by the site and Promoter's television licensees for the Bouts.  Promoter and its licensees or assignees shall have the right to use the name of Fighter, his photograph or other likeness, on commercial and merchandising tie-ups and advertisements, banners, buttons,

posters, T-shirts, clothing (such as hats and jackets), jewelry and other souvenir items, and all similar products. All of the rights, privileges and benefits granted by Fighter to Promoter pursuant to this paragraph 1 are hereinafter referred to as the "Ancillary Rights."

2.    Term

(a)    The term of this Agreement (the "Term") shall commence on the date of the first Bout pursuant to and after the date of this Agreement and shall continue for a period of following such Bout, unless terminated sooner or extended further pursuant to a provision of this Agreement.

(b)    In the event that Fighter at any time during Term fails to be declared the winner of any Bout, for any reason, by the official boxing or athletic commission with jurisdiction over such Bout, then Promoter has the right, but not the obligation, to terminate the this Agreement upon notice to Fighter within twenty business days of the Bout, without any further obligation to Fighter, except for the payment of any purse for such Bout or any purse which may be due for a previously completed Bout. If Promoter does not terminate this Agreement, the terms of Section 3 of this Agreement shall automatically terminate and the parties shall negotiate those terms in good faith; provided, however, that the next Bout shall be for a minimum purse of Thousand Dollars (

(c)    Fighter agrees that Promoter shall have the option to extend the Term of this Agreement for a period of one (1) year under the same terms and conditions as set forth herein at any time during the initial Term of this Agreement.

3.    Minimum Bouts and Purses

(a)    During each year of this Agreement, Promoter shall offer the Fighter the right to participate in        Bouts per year. To the extent, Fighter and Promoter agree to compensation

for a Bout above the minimums set forth below, Promoter shall offer Fighter the right to patriciate in two (2) Bouts per year with good faith efforts for a third Bout if requested by Fighter.

(b)     The compensation to be paid to Fighter for each world championship defense shall be $ ). The compensation to be paid to Fighter for a Bout in which Fighter is in the main event of a pay-per-view broadcast in the United States shall be a minimum of

(c)     For any other Bout during the Term, the parties shall agree in good faith on the compensation to Fighter.

(d)     All purses paid pursuant to this Agreement shall be paid promptly to Bravo Promotions (on behalf of Fighter) upon the conclusion of the Bout, unless Bravo Promotions (on behalf of Fighter) and Promoter agree in writing otherwise.

(e)     The parties shall discuss provision of training expenses on a Bout by Bout basis.

4.     Dates, Sites, Opponents. Transportation and Accommodations

(a)     Promoter shall select, in its discretion, the date and site for each Bout hereunder, upon notice to Fighter.

(b)     The opponent for each Bout hereunder shall be selected by Promoter, subject to the reasonable right of approval of Fighter and subject to the approval of the applicable commission or championship sanctioning body.

(c)     For each Bout hereunder taking place outside of Fighter's county of residence, Promoter shall provide round-trip air transportation, rooms and meals (the "Accommodations") for five (5) persons including Fighter for the period of time prior to and through the date of each Bout as Promoter shall designate in its sole discretion; provided,

however, any Accommodations relating to Fighter and Fighter's wife shall be round-trip business class tickets for each.

5.      Promoter's Right of First Negotiation and Last Refusal

In consideration for Promoter's commitments hereunder, upon the expiration of the Term of this Agreement, Fighter shall negotiate exclusively with Promoter for a period of regarding a new promotional agreement between Fighter and Promoter.  Prior to the expiration of the          exclusive negotiation window, Fighter shall not discuss or negotiate with any other person or entity his future promotional rights or participation in professional boxing matches; provided, however, that Fighter may discuss such matters with Co-Promoters, Fighter's agents, representatives, attorneys, accountants, financial advisors, officers, directors, employees, lenders, coaches or trainers.   In the event that Promoter and Fighter fail to reach an agreement prior to the expiration of the thirty-day exclusive period, Fighter shall have the right to enter discussions and negotiations with other persons/entities regarding his promotional rights and/or participation in professional boxing matches.  However, for a                          following the expiration of the Term of this Agreement, Fighter may not enter into an agreement with a third party regarding a promotional rights agreement or Bout agreement without first making a written offer to Promoter on the same monetary terms as being offered by the third party.  Promoter shall have ten business days from receipt to accept the monetary terms of the proposal, in which case Promoter and Fighter shall enter into an agreement reflecting those monetary terms.  If Promoter rejects, or fails to accept, the offer within the ten business days of receipt then Fighter shall be free to enter into the agreement with the third party.

5

6.     Other Bouts

(a)     Other than the Bouts provided for in this Agreement, Fighter may not contract with any other person or entity to engage in boxing matches, athletic contests or exhibitions during the Term of this Agreement.

(b)     Notwithstanding anything to the contrary contained herein, if any Bout hereunder is subject to a purse bid ("Purse Bid Bout"), Promoter shall submit a bid for such Bout, provided that Fighter agrees that the amount of such bid shall be determined in Promoter's sole discretion and shall not be tied to Promoter's minimum purse obligations hereunder. If Promoter should submit a bid but does not win, then:(i) Promoter's rights hereunder shall continue in full force and shall not be affected in any way; and (ii) Promoter shall be entitled to receive, and Fighter shall direct the applicable promoter of the Purse Bid Bout to pay directly to Promoter, an amount equal to        of Fighter's gross purse for such purse bid Bout, which payment shall be delivered to Promoter by Fighter or at the direction of Fighter within two weeks of the Bout.

7.     Fighter's Approval of Opponents

With respect to those Bouts hereunder for which Fighter shall have a right of approval over an opponent selected by Promoter, Fighter shall notify Promoter of Fighter's approval or disapproval of each proposed opponent not later than five (5) business days after notification by Promoter to Fighter of the proposed opponent. The failure of Fighter to provide timely notice of disapproval shall constitute an approval of the proposed opponent.

6

8.    Intent in Signing

Fighter acknowledges and agrees that his signing of this Agreement is solely for the purpose of obtaining certain promotional services and commitments of Promoter upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the rights herein granted to Promoter as a condition precedent to Fighter's participation in any Bout against another fighter who is under contract to Promoter, or otherwise.

9.    Form of Bout Agreement

For each Bout hereunder, Fighter and Promoter shall execute and comply with the terms of the instant Agreement or the standard boxing contract required by the athletic or boxing commission with jurisdiction over each Bout.

10.    Disability or Postponement

Should any Bout scheduled to be promoted hereunder be postponed for any reason, the obligations of Fighter and Promoter relating to the Bouts set forth in Sections 3, 5 and 6 of this Agreement, and the Term of this Agreement, shall automatically be extended for the period of any such postponement. In addition, if at any time during the Term, or any extension thereof, Fighter becomes injured, suspended or permanently or partially disabled, or otherwise unavailable to participate in Bouts, Promoter, in its sole discretion, shall have the right, for each such injury, disability or suspension, or unavailability, either to (i) extend the Term of this Agreement for the period of such injury, disability, suspension, or unavailability; or (ii) terminate this Agreement upon notice to Fighter without any further liability or obligation to Fighter in the event that Fighter is unable to compete for a period of time in excess of six (6) months.

7

11.    Disqualification.

During the Term, Fighter shall be ready, willing and able to participate in each Bout to be promoted by Promoter hereunder, to the best of Fighter's ability, and shall honestly compete and give an honest exhibition of skills. Without limiting any of Promoter's rights or remedies at law or in equity, Promoter shall have the right to terminate this Agreement in its entirety if Promoter believes, in its good faith judgment that Fighter is not ready, willing and able or willing to participate to the best of his ability. In addition, if at any time during the Term Fighter should commit any act or be charged with any crime or misdemeanor which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with Promoter for a particular Bout or boxing program to be promoted by Promoter in which Fighter was to participate, Promoter shall have the right and option, in its discretion, to terminate this Agreement upon notice to Fighter, without any further obligation or liability to Fighter except for the payment of any agreed purse amount which may then be due for a previously completed Bout.

12.    Fighter's Representations and Warranties.

Fighter represents, warrants and agrees:

(i)    that Fighter is free to enter into this Agreement, and is not a party to, and will not during the Term enter into any contract or agreement to participate as a contestant in a boxing contest which would interfere with Fighter's ability to fulfill his obligations under this Agreement;

(ii)    that there are no pending claims affecting the Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder;

8

(iii)    that Fighter has executed no contract, option or agreement which conflicts with the provisions hereof or which purports to grant anyone else conflicting rights or any rights which would interfere with the full and complete performance by Fighter of his obligations hereunder or the free and unimpaired exercise by the Promoter of any of the rights granted to it hereunder; and

(iv)    that Fighter currently possesses, and will possess throughout the entirety of this Agreement and any extension thereof, the sole and absolute authority to make all decisions with respect to his boxing career and his performance under this Agreement, including, but not limited to, responding to offers for participation in Bouts.  If Fighter enters into an agreement or relationship that grants, transfers, hypothecates to another or affects or undermines any aspect of Fighter's sole and absolute authority to make all decisions with respect to his boxing career and his performance under this Agreement, Promoter shall have the right, but not the obligation, to terminate the Agreement with Fighter.  In the event Promoter does not terminate the Agreement, the terms of section 3 shall automatically terminate and the parties shall negotiate those terms in good faith.

Fighter further agrees to indemnify, defend and hold harmless Promoter and its officers, employees, representatives and agents from and against any suits, claims, actions, proceedings, expenses (including reasonable attorneys' fees) and damages arising from any actual or claimed breach of any of Fighter's representations, warranties and covenants herein.

13.     Promoter's Representations and Warranties.

Promoter represents, warrants and agrees that Promoter is free to enter into this Agreement, and is not a party to, and will not during the Term enter into any contract or agreement which would interfere with Promoter's ability to fulfill its obligations pursuant to the terms and conditions of this agreement.

14.     Injunctive Relief.

Fighter acknowledges and agrees that the services to be rendered or furnished by him and the rights granted to Promoter hereunder are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury. Fighter, therefore, agrees that, upon the finding of a court of competent jurisdiction that such relief is appropriate, Promoter shall be entitled to injunctive and other equitable relief to prevent any breach or default hereunder without any requirement to post a bond, which shall be in addition to and without prejudice to any other rights or remedies Promoter may have in such event.

16.     Right to Assign.

Promoter shall have the right to assign, license or transfer any or all of the rights granted to it hereunder to any person, firm or corporation, so long as Promoter shall remain liable for its financial obligations to Fighter hereunder. However, the obligations of Fighter hereunder are personal to him, and neither the benefits nor the duties of Fighter hereunder may be assigned, pledged or transferred for any reason.

17.     Publicity and Promotion.

Fighter agrees that he will cooperate and assist in the publicizing, advertising and

promoting of each Bout, and that he will appear at and participate in a reasonable number of joint or separate press conferences, interviews, (before and after a Bout) and other publicity or exploitation appearances, or activities (any or all of which may be telecast, broadcast, recorded or filmed), at times and places designated by Promoter (which such expenses including, but not limited to, travel and accommodations will be paid by Promoter). If requested by Promoter, Fighter agrees to accompany Promoter on a press tour in which Fighter shall visit various cities to publicize a Bout and will grant reasonable interviews with the press and media on said tour. Promoter shall provide travel and accommodations for Fighter and two additional persons on said press tours and at least five days' notice if required to leave the United States. Fighter further agrees to cooperate with any sponsors of a Bout and to post reasonable advertising materials at the training camp of Fighter used in connection with publicity or advertising of such sponsors and to participate in reasonable advertising requests of such sponsors. Fighter agrees, at the request of Promoter, that the training and sparring sessions of Fighter at the site of a Bout shall be open to the public.

18.    Promoter's Promotion of Other Fighters

Nothing herein shall prevent Promoter from engaging in promotion activities for any other fighter, including other fighters in the same weight class as Fighter; and Promoter shall have no duty or obligation to direct or arrange any particular Bout for Fighter as opposed to any other Fighter.

19.    Survival of Provisions

If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or

11

the application of such term or provision to persons whose circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

20.   Successors

The terms, conditions and covenants of this Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors or assigns.

21.   Construction

The captions and headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraphs of this Agreement or in any way affect this Agreement. The use of the singular herein shall be deemed to include the plural and conversely the plural shall be deemed to include the singular. The language of this contract shall not to be construed against the drafter.

22.   Notices

If at any time following the execution of this Agreement it shall become necessary or convenient for one of the parties hereto to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing signed by the party serving the same, deposited in the registered or certified United States mail, return receipt requested, postage prepaid, or sent by a recognized courier service, or via email and (a) if intended for Promoter shall be addressed to:

> Top Rank Inc.
> Attn. Harrison Whitman
> 748 Pilot Road
> Las Vegas, Nevada 89119
> hwhitman@toprank.com

and (b) if intended for Fighter shall be addressed to:

> Robert Brant
> 10136 Mapleridge Dr.
> Dallas, TX 75238
> robbrant@icloud.com

or to such other address as either party may have furnished to the other in writing as a place for the service of notice. Any notice so mailed shall be deemed to have been given as of the time the same is deposited in the United States mail or delivered to a recognized courier service.

23.   Legal Fees

In the event that at any time during the term of this Agreement and any extensions thereto either the Promoter or the Fighter shall institute any action or proceeding against the other relating to the provisions of this Agreement, or any default hereunder, then, the unsuccessful party in such action or proceeding agrees to reimburse the successful party for the reasonable expenses of attorneys' fees and the disbursements incurred therein by the successful party.

24.   Entire Agreement

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all ·prior agreements, representations and understandings of the parties with respect to the subject matter of this Agreement. No amendment of, addition to or modification of this Agreement shall be effective unless the same is in writing and signed by all parties. Any term or provision of this Agreement may be waived in a signed writing at any time by the party which is entitled to the benefit thereof; provided, however, that any waiver shall apply only to the specific event or omission waived and shall not constitute a continuing waiver. Any term or provision of this Agreement may be amended or supplanted at any time by a written instrument executed by all the parties hereto. No such agreement shall be binding unless

executed in writing by all parties. This Agreement shall be construed as drafted equally by each of the contracting parties.

25.   Non-Waiver

Waiver of the failure of the Promoter to insist upon strict and prompt performance of the covenants and agreements hereunder and the acceptance of such performance hereafter shall not constitute or be construed as a waiver or relinquishment of the Promoter's rights hereafter to enforce the same strictly according to the tenor thereof, even in the event of a continuous or subsequent default by either party.

26.   Confidentiality

The parties agree to maintain the material terms of this Agreement as confidential information and to refrain from publicly announcing or reporting such terms, except pursuant to court order or order by a governmental or administrative body or for financial statement reporting purposes.  No disclosure of the entry of this contract shall be made unless and until expressly authorized by Promoter.

27.   Governing Law, Jurisdiction, Venue

This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada governing agreements made and to be performed wholly within the State of Nevada.  The parties hereby (a) expressly consent to the sole and exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any dispute between the parties, including, but not limited to, any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum.   The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to

the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year and first above written.

ROB BRANT                                          GREG COHEN PROMOTIONS

By: _____                    _____

TOP RANK, INC.                                     RAPACZ BOXING LLC

_____                        _____

15

Exhibit B

**Top Rank Inc.**
748 Pilot Road
Las Vegas NV 89119

November 16, 2018

Greg Cohen Promotions
Rapacz Boxing LLC

Re:     Rob Brant Co-Promotional Rights Agreement

Gentlemen:

We refer to the Co-Promotional Rights Agreement by and between Top
Rank Inc., ("Top Rank"), Greg Cohen Promotions, Rapacz Boxing LLC, and Rob Brant
("Fighter"), dated as of November 16, 2018 (the "Promotional Rights Agreement"). All
capitalized terms which are not otherwise defined in this letter agreement shall have the
meaning as defined in the Promotional Rights Agreement.

1.     Greg Cohen Promotions and Rapacz Boxing LLC (collectively the "Co-
Promoters"), represent and warrant to Top Rank that they are not currently
subject to any boxing, athletic commission or sanctioning body
suspension, prohibition or other regulatory restriction.

2.     <u>Co-Promotion Fees</u>. For each Bout promoted by Top Rank during the
Term of the Promotional Rights Agreement in which Fighter is defending
his world championship title, Top Rank shall pay the Co-Promoters a fee
of Four Hundred Thousand Dollars ($400,000.00). For each Bout
promoted by Top Rank during the Term of the Promotional Rights
Agreement in which Fighter is participating in the main event of a pay-
per-view broadcast in the United States, Top Rank shall pay the Co-
Promoters a fee of Five Hundred Thousand Dollars ($500,000.00).
Furthermore, if Fighter is participating in the main event of a pay-per-view
broadcast in the United States, Top Rank shall pay Co-Promoters an
additional fee equal to fifteen percent (15%) of the Net Profits Top Rank
is entitled to receive from the bout. To the extent that Fighter is
competing against a Top Rank-promoted fighter, Top Rank, in its
discretion, shall assess the portion of Net Profits attributable to Fighter and
calculate the 15% fee based on that portion. For any other bout of Fighter,
the parties shall mutually agree on the co-promotional fee such that the
total amount committed by Top Rank to Fighter and Co-Promoters is
divided on a 70/30 basis (30% to the Co-Promoters). This Agreement
shall remain in force and effect for any extension of the Promotional
Rights Agreement or any extension of the relationship between Top Rank

1

and Fighter directly following the Term of the Promotional Rights Agreement.

Additionally, within five business days of the full execution of this Agreement, Top Rank shall pay to Co-Promoters a signing bonus of One Hundred Thousand Dollars ($100,000.00).

For the avoidance of doubt, any and all Co-Promotion fees, including without limitation, any portion of Net Profits payable to Co-Promoters and the signing bonus shall be paid to the Co-Promoters pursuant to written directions signed by each of the Co-Promoters and submitted to Top Rank at least three business days prior to any payment due date.

Lastly, to the extent that Top Rank secures options on an opponent of Fighter ("Opponent") as a result of a bout with Fighter in which Opponent defeats Fighter, Top Rank and Co-Promoters shall negotiate in good faith the co-promotional compensation for Co-Promoters on each of the option bouts Top Rank promotes with Opponent.

3.   Definition of Net Profits.  As used in this Agreement, the term "Net Profits" shall mean all revenues (excluding the value of any trade-out or conversion advertising for an event provided by an event sponsor or other non-monetary barter) received directly by Top Rank specifically attributable the event in which Fighter is in the main event, including, all net live gate revenues (after ticket taxes, refunds, discounts, credit card and ticket service bureau fees and charges), or the site fee paid to Top Rank in lieu of live gate revenues, and net revenues from the exploitation of the television and other Ancillary Rights and sponsorship and merchandising rights as specifically generate from the event, after deducting all of Top Rank's accountable costs and expenses in connection with the event and the ancillary rights thereto, including, without limitation of the foregoing, non-appearance, television breakdown, public liability and other insurance; television production, transmission and distribution costs and expenses and commission payments; purses, payments, and non-recoupable compensation and training expenses of all the fighters in the boxing program; co-promotional fees (including the fee paid to Co-Promoter set forth above); booking fees, travel and lodging costs, all arena and ticketing costs and expenses, set-up and breakdown, box office, security, advertising, publicity, production, promotion, marketing, third party legal and accounting; officials' fees and expenses; boxing commission fees and taxes and local taxes on tickets and television revenues; travel and entertainment and the like.  To the extent that there are revenues that Top Rank receives in connection with the Bout that are attributable to an agreement that is not tied to the specific Bout (e.g., a multi-bout sponsorship agreement or broadcast output deal covering more

2

than a single event, etc.), Top Rank shall allocate the amount of revenue attributable to the Bout in its discretion.

4. <u>Profit and Loss Statements and Payment</u>. In connection, with the pay-per-view bouts described in Section 2, Top Rank shall deliver to Greg Cohen Promotions within 75 days after conclusion of a bout, a Profit-and-Loss statement identifying the revenues and expenses included in the computation of the Net Profits (as defined above), accompanied by the payment of any amount due to Co-Promoters. To the extent that Top Rank receives revenues after the 75-day period, it shall send Co-Promoters an updated Profit-and-Loss statement and payment on intervals consistent with Top Rank's internal accounting practices.

5. <u>Travel/Accommodations/Tickets</u>. For each Bout herein described, Co-Promoters shall receive four (4) P1 and four (4) P2 tickets/credentials for the event as well as travel and hotel accommodations for three (3) persons, including two business class tickets.

6. <u>Undercard Bouts</u>. For each bout described in Section 2 above, Top Rank shall provide Co-Promoters with two undercard spots on the same event as Fighter with a total budget of Ten Thousand Dollars ($10,000.00) per undercard bout. Top Rank shall also provide up to six hotel rooms and per diems for each undercard bout. Co-Promoters shall be responsible for the travel-related expenses for each undercard bout. Greg Cohen Promotions shall serve as the point of contact with Top Rank for arranging all such undercard bouts.

7. <u>Promotional Rights Agreement</u>. Co-Promoters hereby agree and acknowledge that Top Rank shall make all the promotional decisions related to the Fighter and Fighter's bouts in its sole discretion, including event expenses and budgets for all of Fighter's bouts, and Co-Promoters' rights with respect to the Promotional Rights Agreement are reflected in the financial participation described herein. Top Rank shall retain for itself all rights granted in the Promotional Rights Agreement. Top Rank agrees to acknowledge and credit Co-Promoters as the co-promoters of Fighter for each bout hereunder. Top Rank shall consult with Greg Cohen Promotions on the selection of opponents for Fighter.

8. <u>Co-Promotional Recognition</u>. For all bouts hereunder, Co-Promoters shall be acknowledged as co-promoters of the bout substantially as follows "in association with Greg Cohen Promotions and Rapacz Boxing," and each of their logos shall be included on all promotional materials created for the bout that include references to the promoters of the bout.

9. <u>Governing Law & Venue</u>. The Parties expressly agree to arbitrate all claims related to this Agreement, including (without limitation) its

implementation, interpretation, validity or enforcement.  Alleged breaches of this Agreement shall be exclusively and solely resolved through an expedited binding and confidential arbitration before a single JAMS arbitrator selected by mutual agreement of the parties or as assigned by JAMS through the JAMS Streamlined Arbitration Rules and Procedure. The parties agree that the arbitration shall take place in Los Angeles, California.  Subject to JAMS rules then in place for expedited proceedings, the Arbitrator will decide how any such proceeding shall be conducted, including whether and how discovery will be conducted, whether and how evidence will be presented, the nature of any briefing and argument and the venue of any such proceeding.  Any ruling or award issued by the Arbitrator shall be final and binding and not subject to any appeal; provided, however, consistent with law, the parties shall be entitled to solely bring actions which may be necessary to confirm, vacate, or enforce any such ruling or award by the Arbitrator.  The prevailing party in any such arbitration shall be entitled to recover reasonable attorneys' fees and costs, including all arbitration costs and fees in conducting the proceeding.  The parties expressly acknowledge and agree that they are waiving their rights to a jury trial and their rights to pursue alleged breaches of this Agreement in state or federal court.  Without limiting the foregoing, this Agreement shall be governed by, and construed in accordance with the substantive law of contracts of the State of Nevada, with respect to contracts made and to be fully performed in Nevada, without regard to Nevada choice of law or conflicts of law.

10. Co-Promoters shall further provide to Top Rank HD quality video footage (cleared for perpetual, worldwide use) of Fighter from previous bouts as well as HD images of Fighter for Top Rank and its licensees' use in the promotion and publicity of Fighter.  Top Rank hereby grants to Co-Promoters the non-exclusive, non-transferrable right, beginning fourteen (14) days following each bout, to use video clips from each bout in aggregate length of no more than the lesser of: (i) fifty percent of the length of each bout; or (ii) three minutes, solely for publicity and promotion of Fighter, provided that said clip shall exclude all original commentators, ENG pieces, music, graphics and clips

11. Confidentiality.  The parties agree to maintain the material terms of this Agreement as confidential information and to refrain from publicly announcing or reporting such terms, except pursuant to court order or order by a governmental or administrative body or for financial statement reporting purposes.

GREG COHEN PROMOTIONS

By: _____

TOP RANK INC.

By: _____

RAPACZ BOXING LLC

By: _____